LANCASTER et al. v. ASHEVILLE ST. RY. CO. et al.

(Circuit Court, W. D. North Carolina.    November 10, 1898.)

1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES—LOCAL ACTIONS.
    Under the judiciary act of 1888 (25 Stat. 433), a circuit court of the United States cannot entertain a personal action by joint plaintiffs who are citizens of different states against a defendant who is not an inhabitant of the district where the action is brought, but such provision does not affect the jurisdiction of the court in local actions to enforce a lien or claim upon real estate or personal property within the district.

2. RECEIVERS—GROUNDS FOR APPOINTMENT.
    To justify a court of equity in appointing a receiver pendente lite, the plaintiff must show at least a probable interest in the property, and there must exist a well-grounded apprehension of immediate injury to such interest unless the property is taken in charge of by the court.

3. SAME—DISPLACEMENT OF ANOTHER RECEIVER.
    A receiver will not be appointed by a federal court for a street railroad in a suit by bondholders to which other creditors, holding a large part of the road's indebtedness, are not parties, where no fraud or bad faith towards plaintiffs is shown, and the property is already in the hands of a receiver appointed by a state court, whose management is shown to be excellent, and to meet the entire approval of those most largely interested.

Duff Merrick and C. A. Webb, for plaintiffs.
F. A. Sondley and R. Burnham Moffat, for defendants.

EWART, District Judge.    This is a bill in equity filed by G. W. Lancaster, a citizen of the state of Florida, and Jeanette H. Martin, a citizen of the state of Massachusetts, against the Asheville Street-Railway Company, the Asheville Street-Railroad Company of Asheville, N. C., the Atlantic Trust Company of New York, W. A. White, A. M. White, and Alfred T. White, individually, and as trading under the firm name and style of W. A. & A. M. White, citizens of New York, and George B. Moffat, a citizen of New York.    The Asheville Street-Railway Company on the 2d of July, 1888, became the owner of a certain street railway in the city of Asheville, and operated the same by virtue of its charter and certain franchises granted to it by the city of Asheville.    On the same date, to wit, July 2, 1888, it executed and issued first mortgage bonds to the amount of $50,000.    To secure the payment of said issue of bonds the said Asheville Street-Railway Company duly executed and delivered to the Atlantic Trust Company (a corporation organized and existing under the laws of the state of New York, and a citizen of that state, with its principal place of business in New York) its certain first mortgage or deed of trust, thereby conveying to the latter, as trustee, all of its property and franchises then owned, and all that might hereafter be acquired. The plaintiff Lancaster became the purchaser of 8 of these first mortgage bonds, of $500 each.    The plaintiff Jeanette H. Martin also acquired and is now the owner of 4 of the first mortgage bonds, of $500 each.    Prior to the commencement of a suit in this court entitled "Atlantic Trust Company v. Asheville Street-Railway Company and the Asheville Light & Power Company," the Asheville Street-Railway Company paid off, took up, and retired 48 of the said first mortgage bonds, leaving outstanding only 52 of the said bonds, among

which are those held and owned by the plaintiffs. On the 1st of July, 1890, the defendant the Asheville Street-Railway Company executed and placed upon the market for sale another issue of bonds, amounting to $100,000, and, to secure payment of the same, executed and delivered a second mortgage upon all its property and franchises to the Atlantic Trust Company. Only 74 of said mortgage bonds were ever sold, and of this number W. A. White and A. M. White were large holders. On the 29th of April, 1898, because of default made in the payment of the interest then due on said bonds, the Atlantic Trust Company, as trustee, brought suit in the United States circuit court against the Asheville Street-Railway Company and the Asheville Light & Power Company, a corporation, whose property had been secured by the Asheville Street-Railway Company, for the purpose of foreclosing said mortgage or deed of trust, entitled "Atlantic Trust Company, Trustee, vs. Asheville Street-Railway Company and the Asheville Light & Power Company." In this suit a decree was rendered by which all the property of the Asheville Street-Railway Company, as conveyed in and by second mortgage, was sold, and purchased by A. M. White, "purchasing in behalf of himself and his associates, forming a corporation to be known as the Asheville Street-Railroad Company, under section 697, c. 16, Code N. C." This sale was confirmed, and a deed duly executed and delivered to the said Asheville Street-Railroad Company by the commissioner designated by the court to make such sale. By the terms of said sale, as expressly set forth in the said order of sale, the decree of confirmation, and the said deed, the said defendant the Asheville Street-Railroad Company took all the said property, subject "to the lien of the twenty-six thousand dollars of bonds secured by the mortgage or deed of trust executed by the Asheville Street-Railway Company to the Atlantic Trust Company, as trustee, dated July 2, 1888," which is the first mortgage. There has never been any decree of foreclosure in this or any other court as to said first mortgage or deed of trust. Shortly after, the defendant the Asheville Street-Railroad Company went into possession of the said property; and on or about the 7th of January, 1895, the sheriff of Buncombe county, by virtue of an execution issuing from the superior court of said county upon a certain judgment therein docketed in favor of one Sarah Cawfield against the Asheville Street-Railway Company, sold to one C. A. Moore all the franchises and property hitherto conveyed to the Asheville Street-Railroad Company by A. T. Summey, commissioner, and put the said Moore in possession thereof. Immediately thereafter the Asheville Street-Railroad Company brought suit in the superior court of Buncombe county against the said C. A. Moore for the possession of the said property, alleging that the sale was irregular, fraudulent, and void. Pending this suit one J. E. Rankin was appointed receiver of all the property in controversy between the parties, and is now acting in such capacity. The suit of the Asheville Street-Railroad Company against C. A. Moore is still pending in the said superior court. In September, 1892, defendant George B. Moffat purchased from C. A. Moore and Sarah Cawfield the Cawfield judgment, and the claim of title of the said Sarah Cawfield and Charles A. Moore, paying therefor the sum

of $3,250. Deeds were executed by the said C. A. Moore and wife and Sarah Cawfield to Moffat conveying all interest that the said Moore and Cawfield had in the said property or franchises of the Asheville Street-Railroad Company. The defendant Moffat is a son-in-law of William A. White. After the purchase of this judgment and claim of title from Moore and Cawfield by Moffat, no efforts appear to have been made on the part of the Asheville Street-Railroad Company or the Whites or the said George B. Moffat to secure a final judgment in the cause pending in the superior court entitled "The Asheville Street-Railroad Company v. C. A. Moore." Nor has the said Rankin been discharged as receiver of such company. The judgment of Sarah Cawfield against the Asheville Street-Railroad Company, under which Moore claims to have purchased, was recovered for a personal injury, and, by virtue of a North Carolina statute, is a lien paramount upon the property of the Asheville Street-Railroad Company. Coupons for the interest due July 1, 1895, upon bonds held by the plaintiffs, Lancaster and Martin, were promptly presented for payment at the office of the Atlantic Trust Company, in the city of New York, but payment was refused; the reason assigned being, "No funds." All the coupons maturing since July 1, 1895, are unpaid. After the purchase of the property and franchises of the Asheville Street-Railway Company there was a reorganization, the new company being known and designated as the Asheville Street-Railroad Company. Of the $100,000 bonds issued, $26,000 thereof were set apart to take up and redeem the outstanding first mortgage bonds of the Asheville Street-Railway Company, and $23,000 to take up and redeem all outstanding receiver's certificates; and the payment of both certificates and bonds was made a liability upon, and assumed by, said railroad company, both in its decree of sale and in the deed of conveyance. On the 18th of April, 1898, the plaintiffs made a written demand upon the Atlantic Trust Company that they foreclose said deed of trust in accordance with the terms of said instrument, accompanying said request with an indemnity bond. The Atlantic Trust Company declined to do so, alleging as a reason for such refusal that a majority of the bondholders had not joined in such request for foreclosure, as set out in the mortgage executed July 2, 1888. The mortgage referred to contained the following provisions, viz.:

"In case default shall be made in the payment at maturity of the principal money hereby secured, or any part thereof, and shall continue for a period of six months, then the said party of the second part and its successors is and are, upon a written request of a majority of the holders of such bonds as shall then be outstanding, authorized and empowered to enter into and take possession of the property hereby conveyed." "And in case of the default in the payment of either the principal or the interest of said bonds, or any part of either, as either become due, and such default continuing for the period of six months, then the party of the second part, at the written request of the holders of a majority of the outstanding bonds, accompanied by an indemnity as hereinbefore provided, shall, with or without entry, and in its discretion, sell the property hereby conveyed. * * *"

The plaintiffs ask: First. For a writ of injunction restraining and enjoining the defendants the Asheville Street-Railway Company, the firm of W. A. & A. M. White, its individual members, and George B.

Moffat from in any way disposing of any of the property hereinafter mentioned, and from proceeding in any manner in the cause entitled the "Asheville Street-Railroad Company v. Charles A. Moore," now pending in the superior court, Buncombe county, until the further orders of this court. Second. For the appointment of a receiver, with full power and authority on the part of such receiver to manage and operate the said Asheville Street-Railroad Company under the directions of the court. Third. For judgment against the defendants the Asheville Street-Railway Company, W. A. White, A. M. White, and Alfred T. White, individually, and as composing the firm of W. A. & A. M. White, and in favor of George W. Lancaster, for the sum of $4,000, with interest thereon at the rate of 6 per cent. per annum, payable semiannually, from January 1, 1895, and in favor of Jeanette H. Martin for the sum of $2,000, with interest thereon at the rate of 6 per cent. per annum, payable semiannually, from January 1, 1895, and for costs. Fourth. For a decree of sale of properties conveyed in the first mortgage described in the bill of complaint. Fifth. That the deeds executed by C. A. Moore and wife and Sarah Cawfield to the defendant George B. Moffat be declared fraudulent and void as to plaintiffs; that the said defendant Moffat be declared to hold said property only in trust for the benefit of plaintiffs, and other creditors in like relation, according to their respective interests. Sixth. For such other relief as to the court may seem fit, and as may be necessary to fully protect and enforce their rights and equities.

Upon the oral argument, counsel for the defendants suggested a question as to the jurisdiction of the court to hear this cause, and cited Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303. The case cited is applicable to the defendants W. A. White, A. M. White, and Alfred T. White, individually, and as trading under the firm name of W. A. & A. M. White; and the action is dismissed as to them. It has no bearing, however, in so far as the other defendants are concerned. The case of Smith v. Lyon involved only the rights of parties to personal actions, residing in different districts, to sue and be sued, and was entirely unaffected by the act of 1888 (25 Stat. 433), which deals with defendants only in local actions, and expressly reserves jurisdiction if the suit be one to enforce a lien or claim upon real estate or personal property. American F. L. M. Co. v. Benson, 33 Fed. 456; Carpenter v. Talbot, Id. 537; Ames v. Holderbaum, 42 Fed. 341; Wheelwright v. Transportation Co., 50 Fed. 709; McBee v. Railway Co., 48 Fed. 243; Spencer v. Stock-Yards Co., 56 Fed. 741. In line with these cases, and almost directly in point, are decisions of the supreme court of the United States. Vide Goodman v. Niblack, 102 U. S. 556; Mellen v. Iron Works, 131 U. S. 352, 9 Sup. Ct. 781. See, also, Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, and Dick v. Foraker, 155 U. S. 411, 15 Sup. Ct. 124, both of which decisions appear to be directly in point.

This question of jurisdiction being settled, the next is, are the plaintiffs entitled to the appointment of a receiver? The plaintiffs having abandoned in the argument all charges of fraud, collusion, and bad faith contained in their bill, and admitting that these charges were unfounded, the case must be considered as one involving no

question of either fraud or collusion. And, if this admission had not been made by plaintiffs' counsel, there is no evidence whatever tending to support any charges of fraud or collusion against the defendants the Whites, the Asheville Street-Railway Company, the Atlantic Trust Company, or George B. Moffat. The exercise of the extraordinary power of a chancellor in appointing a receiver, or in granting writs of injunction or ne exeat, is an exceedingly delicate and responsible duty, to be discharged by the court with the utmost caution, and only under such special or peculiar circumstances as demand summary relief. It is a peremptory measure, whose effect, temporarily at least, is to deprive a defendant in possession of his property before a final judgment or decree is reached by the court, determining the rights of the parties. And since it is a serious interference with the rights of the citizen, without the verdict of a jury, and before a regular hearing, it should only be granted for the prevention of manifest wrong and injury. The principal grounds upon which courts of equity grant their extraordinary aid by the appointment of receivers pendente lite are that the person seeking the relief has shown at least a probable interest in the property, and that there is danger of its being lost unless a receiver is allowed; the element of danger being an important consideration in the case. A remote or past danger will not suffice as a ground for the relief, but there must be a well-grounded apprehension of immediate injury. 5 Thomp. Corp. § 6823; High, Rec. § 8; Kennedy v. Railroad Co., 2 Dill. 448, Fed. Cas. No. 7,706; Hanna v. Hanna, 89 N. C. 71; Rollins v. Henry, 77 N. C. 467; Bryan v. Moring, 94 N. C. 698; Moore v. Mining Co., 104 N. C. 541, 10 S. E. 679. The court will not act upon a possible danger only. The danger must be great and imminent, and demanding immediate relief. Gause v. Perkins, 56 N. C. 181; McCormick v. Nixon, 83 N. C. 113. Nor will the court interfere by injunction merely to prevent a cloud upon the title. Hutaff v. Adrian, 112 N. C. 260, 17 S. E. 78; Browning v. Lavender, 104 N. C. 69, 10 S. E. 77; Cunningham v. Bell, 83 N. C. 328; Southerland v. Harper, Id. 200. It is the duty of the court, in passing upon a motion for an injunction or the appointment of a receiver, to consider the consequences of such action upon both parties; and it ought not to interpose unless it is satisfied that the property is being mismanaged and in danger of being lost, or that it is in the possession of an insolvent or unfit trustee. Venable v. Smith, 98 N. C. 523, 4 S. E. 514. There is not an iota of testimony that the property of the Asheville Street-Railroad Company is being mismanaged, or that it is in danger of being lost, or that it is in the possession of an unfit or incapable trustee. On the contrary, it is conceded by the plaintiffs' counsel that there has been marked and rapid enhancement of the value of the property under the management of J. E. Rankin, and it is also conceded that he has proven a most capable and competent receiver. Nor is there any evidence that the defendant George B. Moffat purchased the Moore and Cawfield claims adversely to the railroad company, or that there was the slightest collusion between the defendant Moffat and the Whites to hinder, delay, or defraud

the plaintiffs, or any other persons interested. On the contrary, the said defendant Moffat declares "that it is absolutely and unqualifiedly untrue that there is or ever has been any collusion whatever between me and the firm of W. A. & A. M. White, or any member thereof, and that it has never been, and is not now, my intention to avail myself of the judgment and title acquired by me in order to assert the paramount lien which was asserted thereunder by the said Cawfield and Moore, unless I shall become satisfied that the company would be unable to pay me my advances and interest." The defendant Moffat moreover declares in his affidavit filed in this cause "that I have been and am at all times now ready and willing to satisfy said judgment of record, and to assign to said railroad company my claim of title, whenever such company shall pay to me my advances, interest, and expenses." Nor is there any evidence that there has been any fraud or collusion between the Atlantic Trust Company and the Whites, either as a firm or as individuals, by which a foreclosure of the first mortgage bonds has been prevented. On the contrary, the Atlantic Trust Company have declared their willingness to foreclose the first mortgage bonds whenever requested to do so by the majority of the holders of the first mortgage bonds, as set out in the mortgage executed by the Asheville Street-Railway Company to the Atlantic Trust Company July 2, 1888. And it also appears in the proof that the Whites, as a firm, are not owners of a majority of the first mortgage bonds of the Asheville Street-Railway Company, as alleged in the plaintiffs' bill. On the contrary, many of the first mortgage bondholders are not known, and are not parties to this proceeding. The holders of the receiver's certificates and judgments against the Asheville Street Railway are entitled to liens prior to the bonds of 1888. Then, too, there are stockholders and bondholders of the defendant street-railway company, whose interests in this property are large. All of these are entitled to be heard before a receiver is appointed, who may possibly put their securities in peril. Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556. While it is true that the plaintiffs, Lancaster and Martin, have not received any interest since July 1, 1895, it does not appear that the nonpayment of the said interest has occurred because of any disposition on the part of the said defendant, the Asheville Street-Railway Company, or of its present receiver, Mr. Rankin, to defeat, hinder, or delay the said Lancaster and Martin in the collection of the said interest. On the contrary, it appears from the affidavits of J. E. Rankin, the receiver, that when he assumed charge of the said property its condition was bad, and its entire equipment in a worn and unsatisfactory state; that he at once began to make in the property improvements of an extensive and permanent character, and has continued these improvements up to date; that all of these improvements were made with the earnings of said property while in his hands, and that he has appropriated the entire income of the property in the said improvements; that, of the gross income of the road,—something in excess of $180,000,—at least $40,000 has been expended in permanent improvements and enhancement in value of the said property.

Mr. Alfred M. White, the largest bondholder, declares that Mr. Rankin's receivership has inured greatly to the advantage of the road, and to the increased security of all the holders of liens thereon, including the first mortgage bonds of the old Asheville Street-Railway Company; that when Mr. Rankin was appointed receiver the physical condition of the road was at low ebb, and its earning power insufficient to pay maintenance, operation, and fixed charges; that under his management the physical condition and earning capacity have largely increased; and that the company will soon be in a condition, financially, to purchase for and in the name of the company the adverse claims now held by George B. Moffat. It does not appear upon the proofs submitted that the defendant the Asheville Street-Railroad Company or the defendant George B. Moffat is purposely delaying the settlement of the case of the Asheville Street-Railroad Company against Charles A. Moore, as insisted by plaintiffs' counsel, with a view of defeating, delaying, or hindering the plaintiffs in the collection of the interest on their bonds, and continuing the receivership of Rankin for such purpose. But, on the contrary, it appears that such settlement has not been made because the directors of the company have good reasons to believe that none of the security holders are in reality prejudiced by the receivership continuing until that time. The able counsel for the petitioners contend with some force that Moffat might become insolvent or die, and that in either of these events further complications would arise, thereby delaying, hindering, and perhaps defeating entirely, the claims of petitioners. But courts cannot appoint receivers simply upon barely possible contingencies, or act upon possible dangers only. The danger must be great and imminent, and demand immediate relief. Moreover, in view of the affidavit filed by Moffat, it appears that neither his death nor insolvency could possibly affect the claims of the petitioners. This property is now in the hands of a receiver appointed by a state court, and one who it is conceded is a most capable and efficient officer. The appointment of another receiver to take charge of this property, and of suits which are now pending in another court, could only result in expensive and protracted litigation, thereby greatly depreciating the value of the property of the Asheville Street-Railroad Company, and making it the more impossible for such company to pay off and discharge its first mortgage bonds now outstanding.

The application for a receiver is refused, and the injunction hitherto granted against the said Asheville Street-Railway Company, the Asheville Street-Railroad Company, and George B. Moffat is hereby dissolved. The defendants are entitled to their costs, to be taxed by the clerk of this court.