**LEDBETTER** et al. v. **FARMERS BANK & TRUST CO.** et al.

No. 5209.

Circuit Court of Appeals, Fourth Circuit.

April 11, 1944.

Before SOPER and DOBIE, Circuit Judges, and HUTCHESON, District Judge.

George S. Steele, Jr., of Rockingham, N. C., and Whiteford S. Blakeney, of Charlotte, N. C. (Guthrie, Pierce & Blakeney, of Charlotte, N. C., on the brief), for appellants.

M. G. Wallace, of Richmond, Va. (R. H. Dye, of Fayetteville, N. C., on the brief), for appellees.

DOBIE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Middle District of North Carolina, granting a motion of defendants to dismiss a civil action on the ground that the complaint failed to state a valid claim, and, in turn, denying a motion of the plaintiffs for leave of court to file an amended complaint.

The motion to dismiss under the Federal Rules of Civil Procedure takes the place of the old demurrer, and in considering this motion, we must treat every properly pleaded allegation of fact in the complaint as true. Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865, 867. See, also, Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302, 305; Smith v. Blackwell, D.C., 34 F.Supp. 989, 994. We set forth our own summary of the allegations contained in the complaint.

Plaintiffs-appellants are the administrator c.t.a. of the estate of Robert L. Steele, III, the State of North Carolina, and the Clerk of the Superior Court of Bladen County. On and before March 14, 1939, Steele was the owner of certain timber land situated in Bladen County, North Carolina, and of buildings, sawmills, machinery, and a large amount of sawed and processed lumber located on this land. Prior to this date, Steele executed two mortgages or deeds of trust on this property, and on March 14, 1939, these mortgages were owned by the defendants, Farmers Bank & Trust Company, and Federal Reserve Bank of Richmond (hereinafter called appellees). After Steele had defaulted on the mortgage debt, these appellees, on March 14, 1939, instituted a civil action (in the Superior Court of Bladen County) to foreclose the mortgages. In this action, one J. R. McQueen was, on motion of the appellees, appointed receiver of the mortgaged property, and authorized to operate the sawmill.

The complaint in the instant case alleged that McQueen, as receiver, acted as an agent and representative of the appellees; that he acted in conformity with the desires and directions of the appellees; that he wrongfully dealt with the receivership property; that he was insolvent at the time of his appointment; and that appel-

lees knew, or should have known, of his insolvency.

It was further stated in the complaint that, on April 21, 1939, through the negligence of McQueen in failing to employ a competent fireman; in allowing the doors of the furnace and firebox of the sawmill to become defective; and in failing to provide efficient firefighting equipment, the sawmill, buildings, machinery, lumber and other property were completely destroyed by fire. There was a further allegation that McQueen wrongfully operated the receivership property at a loss. It was also claimed by appellants that the appellees were responsible for the state court's failure to require adequate penal bond from the receiver, in that the appellees suggested to the court a bond in the sum of $10,000, when the value of the property was $110,000.

The United States District Court for the Middle District of North Carolina, on August 26, 1943, granted the motion of appellees and dismissed the action as to the appellees. On September 28, 1943, the District Court denied the application of plaintiffs for leave to amend the complaint. In the proposed amendment, plaintiffs alleged in substance that appellees had improperly interfered with the management of the receivership property in that the appellees wrongfully advised McQueen in regard to taking out insurance on the property.

Appellants raise three questions in this appeal: (1) Does the complaint state a valid claim against these defendants? (2) When a civil action has been dismissed for failure of the complaint to state a valid claim, must a motion for leave to amend the complaint be served within ten days after the order of dismissal? (3) Does the proposed amendment state a valid claim? These three questions will be considered, as they are set out above, in the inverse order.

■ As to the third question, we are not unmindful of the attempted distinction between the substance of the amendment and the general allegations of the original complaint so strongly stressed by counsel in argument, but we believe that counsel have attempted to emphasize words rather than substance. Under the liberality of the Federal Rules of Civil Procedure, we think that these allegations could have been proved under paragraph 8 of the original complaint. We think, further, that the suggested amendment failed to state a valid claim against the appellees.

■ In the light of what has just been said, the second question presents little difficulty. Clearly the refusal of the District Court, after the entry of the order of dismissal, to grant leave to amend the complaint furnishes no ground for a reversal at our hands. If plaintiffs' request for leave to amend the complaint comes under Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, there was no abuse of the District Court's discretion in denying such leave. If the request be treated under Rule 59(b), the motion was not seasonably filed within the ten day limit. And, finally in this connection, if plaintiffs' request be treated under Rule 60(b), again we think the District Court, in denying the request, obviously did not abuse its discretion.

■ With reference to the first question (the most important one in the instant case), we said in Tahir Erk v. Glenn L. Martin Co., supra, 4 Cir., 116 F.2d at page 869: "We are mindful that in weighing the validity of a motion to dismiss for insufficiency, the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. Our duty, rather, is to consider whether in the light most favorable to the plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim. See Karl Kiefer Mach. Co. v. United States Bottlers Mach. Co., 7 Cir., 1940, 113 F.2d 356, 357."

It is conceded that the law of North Carolina is here determinative of this question. Counsel for appellants strenuously urge that there is a clear distinction between a receiver appointed in a mortgage foreclosure proceeding and a receiver who represents general creditors. We do not deny this assertion as a general proposition, yet for our purposes here the contention is answered by the statute itself. The North Carolina statute is expressly made applicable to all receivers. North Carolina Code (Michie 1939) § 860, subd. 4.

Counsel for appellants argue that in a receivership under proceedings for the foreclosure of a mortgage, the legal incidents of the situation are quite similar to those when the mortgagee himself has entered into possession of the mortgaged

property. But the very purpose of the appointment of the mortgage receiver denies this contention. As Professor Glenn points out, 2 Glenn, Mortgages, § 168.1 p. 905: "But one of the most important points may here again be emphasized, which is that the mortgage receivership not only captures the rents but also saves the mortgagee, even if he has a right to enter, from a serious consequence of the latter practice. I refer to the accountability of a mortgagee in possession, which, as we will learn, hangs *en potence* over every mortgagee who chooses to enter of his own strength rather than by means of a receiver."

A point requiring some comment is the contention of the appellants that the receiver acted as the agent of the appellees and should be so considered in connection with the legal rights and duties of the parties involved. An elementary factor in the principal-agent relationship is control. As stated in I Restatement, Agency, § 14, p. 47: "A principal has the right to control the conduct of the agent with respect to matters entrusted to him."

In further comment upon this proposition, at page 48 it is said: "There are many relations in which one acts for the benefit of another which are to be distinguished from agency by the fact that there is no control by the beneficiary, that is, executors, guardians and receivers, although required to act wholly for the benefit of those on whose account the relationship has been established are not subject to their directions."

It is well recognized that a receiver is the agent only of the court appointing him; he represents the court rather than the parties. He is custodian of property which is under the control of the court. See 23 R.C.L.-Receivers § 2, p. 7. The appointment of a receiver is a judicial act. It is not a matter of positive right, but rests in the sound legal discretion of the appointing judge. Suggestions as to the person to be appointed as receiver do not have the legal effect of making the receiver the agent of the party making the suggestion. Whitehead v. Hale, 118 N.C. 601, 24 S.E. 360; see also Venable v. Smith, 98 N.C. 523, 4 S.E. 514; Hanna v. Hanna, 89 N.C. 68, 71. A receiver has been defined as "an indifferent person between parties, appointed by the court to receive the rents, issues, or profits of land, or other thing in question

* * *, pending the suit, where it does not seem reasonable to the court that either party should do it." Booth v. Clark, 17 How. 322, 331, 15 L.Ed. 164.

It might well be that a receiver acting contrary to orders of the court, at the instance of a party in interest, would be properly held to act as the agent of such party. Leathers v. Kelling's Trustee, 12 Ky.Law Rep. 92; but in the absence of any fraud or collusion (and none was here alleged) the mortgagee should not be held liable for injury to the property which is in the receiver's possession, since the possession of the receiver is in law the possession of the court. High, Receivers, 4th Ed., § 270, p. 319; Battle v. Davis, 66 N.C. 252; Simmons v. Allison, 1896, 118 N.C. 761, 24 S.E. 740; Gobble v. Orrell, 1913, 163 N.C. 489, 79 S.E. 957, 959. Though a receiver appointed by the court acts for all parties interested, he is not the agent of the parties in the sense that each or any of the parties is responsible for his acts. City Sav. Bank v. Carlon, 87 Neb. 266, 127 N.W. 161.

It is contended, by reason of the fact that the appellees suggested an inadequate amount in the bond of the receiver, they have thereby rendered themselves legally liable to the mortgagor here. This contention is unsound so long as the court's order was a valid one. The determination of the amount of the bond is within the discretion of the court, North Carolina Code (Michie 1939) § 862; and the North Carolina court has expressly stated that an order appointing a receiver is not void because of an inadequate bond. Nesbitt & Bro. v. Turrentine, 83 N.C. 535.

Appellants' assertion that the mortgagee had a duty to see that the property was insured is without legal merit. This question is well settled, adverse to appellants' claim. As Professor Glenn points out, 1 Glenn, Mortgages, § 27.4, p. 182: "Of course, neither party (mortgagor or mortgagee) is under any obligation to insure merely because of the mortgage relation." See, also, Lockett v. Western Assur. Co., 1935, 190 Ark. 1135, 83 S.W.2d 65; Warrener v. Federal Land Bank, 1936, 266 Ky. 668, 99 S.W.2d 817.

We have carefully examined the cases urged by appellants to sustain their complaint. They rely most strongly on Sorchan v. Mayo, 50 N.J.Eq. 288, 23 A.

479. There the receiver appointed was the mortgagee's own solicitor and agent. The facts alleged here show no such relationship. The Tennessee cases, Downs v. Allen, 78 Tenn. 652, and Terrell v. Ingersoll, 78 Tenn. 77, hold that the plaintiff (movant) is liable for all loss arising from the receiver's failure to do his duty. These cases, of course, merely have persuasive authority. We believe that the doctrine of these cases practically serves to frustrate the entire purpose of the mortgage receivership.

We might point out, in conclusion, that the appellants have never challenged either the jurisdiction of the Superior Court of Bladen County to appoint this receiver or the power of that court over its receiver. And appellants never in that court objected to the appointment of McQueen as receiver, never objected in that court to the amount of the bond; and, finally, these appellants never, as they well might have done, asked that court to require its receiver to take out adequate insurance upon the mortgaged property, which, through the receiver, was in the lap, and under the control, of that court.

We, accordingly, affirm the judgment of the District Court.

Affirmed.